IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DERRICK WARE,<br><br>Defendant. | No. CR08-0023 and<br>No. CR95-0009<br><br>REPORT AND<br>RECOMMENDATION |

On the 2nd day of April 2012, this matter came on for hearing on the First Supplemented and Substituted Petition for Warrant or Summons for Offender Under Supervision (docket number 97 in No. 1:95-cr-00009-LRR and docket number 87 in No. 1:08-cr-00023-LRR) filed on March 22, 2012. The Government was represented by Assistant United States Attorney Peter E. Deegan, Jr. Defendant Derrick Ware appeared in person and was represented by his attorney, Michael Lanigan.

Defendant is on supervised release in two cases originating in this district. The Government asks that Defendant's supervised release be revoked in both cases.

## I. RELEVANT FACTS AND PROCEEDINGS

On June 8, 1995, Defendant Derrick Ware was charged by indictment with three counts of distribution of crack cocaine and one count of conspiracy to distribute and possess with intent to distribute cocaine.[1] The Government sought revocation of

---

[1] *United States v. Derrick Ware*, No. 1:95-cr-00009-LRR (N.D. Iowa). The early part of the file is not on cm/ecf, and the original file was apparently destroyed when the federal courthouse was flooded in June 2008. The relevant information is found, however, in the Presentence Report (docket number 95-1) attached to the Supervised Release
(continued...)

Defendant's pretrial release after four urine specimens provided by Defendant tested positive for the presence of marijuana. A warrant was issued for Defendant's arrest after he failed to appear at a pretrial revocation hearing scheduled on December 6, 1995. On January 21, 1996, Defendant was arrested and his pretrial release was revoked. On February 27, 1996, Defendant pleaded guilty to conspiracy to distribute five grams or more of cocaine base.

On May 30, 1996, Defendant was sentenced to 132 months of imprisonment, followed by 4 years of supervised release. The judgment was amended on February 2, 1999, however, reducing the term of imprisonment to 96 months. All other terms and conditions of the original judgment remained unchanged. Defendant was discharged from federal prison on December 20, 2002.[2] Defendant immediately began serving a prison term previously imposed in state court, and was released from state custody on July 16, 2006. Accordingly, Defendant began his term of supervised release on the 1995 drug conviction on July 16, 2006.

A petition to revoke Defendant's supervised release was filed on July 27, 2007. Following a hearing on August 9, 2007, Defendant's supervised release was revoked and a 10-month term of imprisonment was imposed. It was also ordered that Defendant be on supervised release for a term of two years following release from imprisonment.

On April 2, 2008 – while he was still serving his 10-month revocation in the 1995 drug case – Defendant was charged by information with three counts of bank fraud.[3] It

---

[1](...continued)
Violation Worksheet (docket number 95) filed on March 16, 2012.

[2] This information is obtained from the Presentence Report (docket number 82-1) prepared in *United States v. Derrick Ware*, No. 1:08-cr-00023-LRR (N.D. Iowa), attached to the Supervised Release Violation Worksheet (docket number 82) filed on March 16, 2012.

[3] *United States v. Derrick Ware*, No. 1:08-cr-00023-LRR (N.D. Iowa).

2

was alleged that beginning in November 2006 and continuing through April 2007 – while he was on supervised release in the 1995 drug case – Defendant executed a scheme to defraud financial institutions by submitting counterfeit payroll checks. On June 26, 2008, Defendant pleaded guilty to all three counts. On December 8, 2008, Defendant was sentenced to 41 months of imprisonment, followed by 5 years of supervised release. The judgment and sentence were affirmed on appeal. On February 18, 2010, the judgment was amended to 37 months of imprisonment, followed by 5 years of supervised release. Defendant's supervised release on the bank fraud charges began on January 28, 2011.[4]

On December 22, 2011, Defendant committed the crime of forgery, a Class D felony.[5] Defendant told officers at the Waterloo Police Department that he found a checkbook belonging to Allen Spray on the floor in the break room at work. Defendant took "a few checks" from the checkbook. Later, Defendant conspired with Francis Lacey to forge and cash a check on Spray's account in the amount of $800. Defendant and Lacey each received $400. While the record is somewhat imprecise, Defendant also apparently cashed a $70 check at Kwik Stop. Defendant also tried to pay a USCellular phone bill online by using routing numbers on the bottom of Spray's check. It would appear that fraudulent online payments were successfully made at Sprint and AmeriCredit, with an attempt to pay a bill at Progressive Insurance denied. A complaint was filed in the Iowa District Court for Black Hawk County, charging Defendant with forgery (a Class D felony) in violation of Iowa Code section 715A.2. That action is still pending.

---

[4] Because Defendant was incarcerated on the 2008 bank fraud charges when he otherwise would have been released following revocation on the 1995 drug charge, his two-year term of supervised release on the 1995 drug charge also began on January 28, 2011.

[5] At the instant hearing, Defendant admitted that he committed the crime of forgery, as alleged in the First Supplemented and Substituted Petition, and admitted the truth of the allegations contained in the attachments to the First Supplemented and Substituted Petition.

## II. DISCUSSION

Defendant admits that he violated his supervised release by committing a new law violation.[6] The only issue in dispute is the appropriate disposition. The probation officer and the Government ask that Defendant's supervised release be revoked and that he be ordered to serve an 18-month term of imprisonment. The probation office and the Government also seek a three-year term of supervised release on the 2008 bank fraud charges, with no further supervised release to follow on the 1995 drug case. It is recommended that the subsequent supervised release include placement at a halfway house.

In support of its request, the Government notes that Ware has a substantial prior criminal record, including conduct similar to his new law violation here. According to his most recent presentence investigation report (docket number 82-1), Defendant's criminal behavior started as a juvenile with adjudications for attempted criminal sexual assault, attempted theft of an auto, criminal trespass to a motor vehicle, theft, and burglary. As an adult, Defendant has convictions for resisting arrest, theft, possession of a stolen motor vehicle, possession of burglary tools, disorderly conduct, theft in the third degree, operating a motor vehicle without the owner's consent, assault, theft in the fifth degree, sexual abuse in the third degree, and failing to register as a sex offender. Two of the theft charges appear to involve forged or insufficient funds checks. As described above, Defendant was on supervised release for a scheme involving forged payroll checks when he forged the check constituting the instant violation. It should be noted that Defendant's

---

[6] Defendant also violated the standard condition which required him to notify his probation officer within 72 hours after being arrested or questioned by a law enforcement officer. On February 15, 2012, Defendant received a phone message from a Waterloo police officer, indicating that they wanted to question him. Defendant talked to the officer by phone on March 7 and met with him in person on March 8. Defendant surrendered himself on March 11 and was released the same day. Defendant first contacted his probation officer on March 12.

4

violation is not limited to a single forged check, but also includes fraudulent online payments and, apparently, at least one other forged check.

The Defendant "doesn't object" to revocation with 18 months' imprisonment, but asks that the term of imprisonment be served at a halfway house in Waterloo, so that he can continue his employment. In support of his request that he be permitted to serve his time at a halfway house, Defendant notes that he is drug-free and has a good job. According to Defendant's Exhibit A, Defendant has been employed at Waterloo Warehousing & Service Co., Inc. since February 14, 2011. He currently works as a general laborer on the first shift and is paid $14.35 per hour. At the time of hearing, Defendant's counsel represented that Defendant is paying nearly $320 per month in restitution.

According to the supervised release violation worksheet, Defendant's new law violation constitutes a "Grade B" violation, while his association with persons involved in criminal activity and his failure to notify his probation officer of contact with other law enforcement within 72 hours constitute "Grade C" violations. The guideline range of imprisonment for a violation in the 1995 drug case is 12-18 months, while the guideline range of imprisonment in the 2008 bank fraud case is 18-24 months. Thus, the 18 months of imprisonment recommended by the probation office and the Government is at the high end of the range for the 1995 case and at the low end of the range for the 2008 case. The maximum statutory term of imprisonment is five years in the 1995 case and three years in the 2008 case. The maximum statutory term of supervised release in the 1995 case is life, while the maximum term of supervised release in the 2008 case is five years. The mandatory revocation provisions of 18 U.S.C. § 3583(g) are *not* applicable.

I believe that revocation of Defendant's supervised release is appropriate. Defendant's supervised release in the 1995 drug case was previously revoked when Defendant engaged in the activities which constitute the 2008 bank fraud charges. Now, while Defendant was on supervised release in both cases, he again forged a check taken

from a co-worker and engaged in other fraudulent transactions. Even Defendant concedes that revocation of his supervised release and an imposition of an 18-month term of imprisonment is appropriate.

The fighting issue is whether Defendant should be permitted to serve his term of incarceration at a halfway house in Waterloo in order to maintain his employment. The Government resists Defendant's request, noting that residing at a halfway house is generally intended to be a short-term placement. The Government also argues that a term of imprisonment following revocation is intended to be punitive and, hopefully, have a deterrent effect. I find the Government's arguments to be persuasive. While Defendant has been able to maintain steady employment and pay restitution while on supervised release, his continuing criminal activity requires further incarceration. Given all of the facts and circumstances, I recommend that Defendant's supervised release be revoked, with an 18-month term of imprisonment, followed by 3 years of supervised release. His subsequent supervised release should include placement at a halfway house.

### III. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that Defendant's supervised release be revoked and that he be sentenced to serve an 18-month term of imprisonment. It is further **RECOMMENDED** that following his term of imprisonment, Defendant be placed on supervised release for a period of three years in No. CR08-0023, but that no term of supervised release follow in No. CR95-0009. Defendant's supervised release in No. CR08-0023 should include placement at a halfway house.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on

the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 2, 2012.

DATED this 3rd day of April, 2012.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA